IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| COREY S., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:25CV790 |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER AND MEMORANDUM OPINION</u>
## <u>OF UNITED STATES MAGISTRATE JUDGE</u>

The plaintiff, Corey S. ("Corey"), has sought review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits, a period of disability, and supplemental security income.[1] The Court has considered the certified administrative record and dispositive briefs from each party. Because substantial evidence supports the determination of the Administrative Law Judge ("ALJ"), the Court will deny Corey's request for the award of benefits or for a remand, as set forth below.

## I. PROCEDURAL HISTORY

Corey filed an application for disability insurance benefits, a period of disability, and supplemental security income alleging a disability

onset date of December 26, 2020. (Tr. 201-07.) The application was denied initially and upon reconsideration. (Tr. 104-12, 117-23.) After a hearing, the ALJ determined on May 4, 2023 that Corey was not disabled under the Act. (Tr. 17-69.) The Appeals Council denied a request for review. (Tr. 1-6.) Corey then sought review in this Court, which granted the Commissioner's consent motion for remand. (Tr. 914-24.) A new hearing was held before a different ALJ who determined on May 7, 2025 that Corey was not disabled under the Act. (Tr. 835-88.) Exercising his right to direct judicial review of the ALJ's decision after this Court's remand, Corey bypassed the Appeals Council and sought review in this Court on September 2, 2025. Docket Entry 1. *See* 20 C.F.R. §§ 404.984, 416.1484

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. *See* Docket Entry 4. By Order of

Reference, this matter was referred to the Undersigned to conduct all proceedings in this case pursuant to 28 U.S.C. § 636(c). *See* Docket Entry 12.

(authorizing a claimant to bypass Appeals Council review when case was previously remanded from a federal court).

## II. STANDARD OF REVIEW

While Section 405(g) of Title 42 of the United States Code "authorizes judicial review of the Social Security Commissioner's denial of social security benefits," *see Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006), the scope of that review is specific and narrow, *see Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Specifically, review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Put simply: the issue before the Court is not whether Corey is disabled but whether the finding that he is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the correct process, set forth in 20 C.F.R. §§ 404.150, 416.920, to determine disability. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).

"The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 416.920(a)(4), 404.1520(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy.

*Id.* at 472. A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* at 473. "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant

can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citations omitted).

Here, the ALJ concluded that Corey engaged in substantial gainful activity beginning on November 1, 2022 through the date of the decision, May 7, 2025. (Tr. 846-47.) Consequently, the ALJ directed the remainder of his findings to the requested closed period, December 26, 2020 through October 31, 2022. Specifically, the ALJ determined at step one that Corey had not engaged in substantial gainful activity from December 26, 2020 through October 31, 2022. (Tr. 838.) The ALJ next found the following severe impairments from December 26, 2020 through October 31, 2022 at step two: "degenerative disc disease of the lumbar spine, and pelvic floor dysfunction with right inguinal pain." (Tr. 838.) At step three, the ALJ found that from December 26, 2020 through October 31, 2022 Corey did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 838.)

The ALJ next set forth Corey's Residual Functional Capacity ("RFC") and determined that from December 26, 2020 through October 31, 2022 he could perform light work with the following additional limitations:

he could stand/walk for a total of four hours in an eight-hour workday, but for only 30 minutes at a time, after which time he would have needed to sit for 15 minutes; he could sit for a total of six hours in an eight-hour workday, but for only one hour at a time, after which time he would have needed to stand/walk for 15 minutes; he could never climb ladders, ropes, or scaffolds; he could occasionally climb ramps and stairs; he could frequently balance; he could occasionally stoop, kneel, crouch, and crawl; he needed to avoid concentrated exposure to hazards; he could frequently reach in all directions with his right (dominant) upper extremity; and would have been off-task for a maximum of 14 percent in an eight-hour workday.

(Tr. 839.)

At the fourth step, the ALJ determined that Corey was unable to perform his past relevant work from December 26, 2020 through October 31, 2022. (Tr. 844.) At step five, the ALJ concluded that there were other jobs in the national economy that Corey could perform. (Tr. 845.)

3

## IV. DISCUSSION

Corey contends that "[t]he ALJ erred by failing to account for absences due to [his] extensive recovery medical treatment in the RFC." Docket Entry 9 at 5. As explained in greater detail below, this objection has no merit.

### A. Standard for the RFC Determination.

The RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairments and any related symptoms (e.g., pain). *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (unpublished) (defining the claimant's RFC as "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s)") (internal citation omitted); *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

"Social Security Ruling 96-8p explains that the RFC 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations omitted). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Yet, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Brown v. Comm'r of Soc. Sec.*, 873 F.3d 251, 269 (4th Cir. 2017). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only [then] may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has held that "meaningful review is frustrated when an ALJ goes straight from listing the evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (explaining that "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion"). As noted earlier, the ALJ "must both identify evidence that supports his conclusion and 'build an accurate and

4

logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (alteration in original) (quoting *Monroe*, 826 F.3d at 189), *superseded on other grounds as recognized in Rogers v. Kijakazi*, 62 F.4th 872, 878-80 (4th Cir. 2023). An ALJ's failure to do so constitutes reversible error. *See Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017). Where an ALJ's "analysis is incomplete and precludes meaningful review," remand is appropriate. *Monroe*, 826 F.3d at 191.

Moreover, "[a]n ALJ assesses the credibility of a claimant's subjective statements about his condition as part of the RFC assessment," *Ladda v. Berryhill*, 749 F. App'x 166, 170 (4th Cir. 2018) (unpublished), using a two-part test: "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged,'" *Craig*, 76 F.3d at 594 (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)).

If such an impairment exists, the ALJ must then consider, as the second prong of the test, all available evidence, including the claimant's statements about pain, to determine whether the claimant is disabled. *Id.* at 595-96. In so doing, the ALJ need not credit them if they conflict with the objective medical evidence or if the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* Where the ALJ has considered the relevant factors, *see* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), and heard the claimant's testimony and observed his or her demeanor, the Court will defer to the ALJ's determination regarding those subjective complaints. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Those relevant factors include:

(i)    [Plaintiff's] daily activities;

(ii)   The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

(iii)  Precipitating and aggravating factors;

(iv)   The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate his pain or other symptoms;

(v)    Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of his pain or other symptoms;

(vi)   Any measures [Plaintiff] use[s] or [has] used to relieve

5

his pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

B. The ALJ Adequately Considered If Treatment Left Corey Off-Task or Absent.

Here, as explained in greater detail below, the ALJ adequately considered the extent to which Corey's treatment would require him to be off-task or absent from work. More specifically, the ALJ discussed Corey's presentation at the emergency department on December 26, 2020 when he reported right-sided lower back/buttock pain and right forearm pain after being clipped by a car's side view mirror while riding his bicycle. (Tr. 840, 564, 568, 571). He was not in acute distress, had full range of motion of the upper and lower extremities, could stand without difficulty, and did not have any visible bruises, bleeding, or open wounds. (Tr. 840, 572.) A pelvic x-ray was negative for fracture or dislocation. (Tr. 840, 572.) Corey was advised to take nonsteroidal anti-inflammatory agents ("NSAIDs") as needed and to expect gradual improvement. (Tr. 840, 572.)

The ALJ further considered that a few days later, Corey established care with Kyle Obendorf, PA-C, and complained of pain from the accident but acknowledged not taking any NSAIDs. (Tr. 840, 568.) Corey had bruising to his right lower back, tenderness to palpation to the right of his lumbar spine, no midline tenderness, negative straight leg raise test, no gross neurological deficits, slightly decreased grip strength on the right due to pain, tenderness to palpation of the elbows, and full active and passive range of motion of the elbows without pain. (Tr. 841, 570.) Corey could do a full standing squat but with pain. (Tr. 841, 570.) PA Obendorf assessed acute right-sided low back pain without sciatica and bilateral elbow joint pain and advised Corey to take naproxen, to advance activity as tolerated, and to return in a few weeks. (Tr. 841, 570-71.)

The ALJ also discussed that on January 4, 2021, about a week after the accident, Corey called PA Obendorf's office, said he was still having pain, and requested PA Obendorf "write him out until 1/12." (Tr. 841, 567.) When he saw PA Obendorf on January 12, 2021, Corey continued to complain of pain and said he could not perform his 12-hour work shift with its heavy lifting and up to 23,000 steps. (Tr. 841, 564-65.) On

6

exam, Corey had full active range of motion of the bilateral elbows without pain; tenderness to palpation at the posterior aspect of his right shoulder, right paracervical muscles, and neck; full strength; full active and passive range of motion of all joints with some discomfort of the neck, right shoulder, and right hip; tenderness to palpation of the lumbar spine; and negative straight leg raise test. (Tr. 841, 566.) Corey could stand from a seated position but with complaints of right-sided lower back pain. (Tr. 841, 566.) PA Obendorf wrote a work note for Corey and recommended he increase activity as tolerated, take naproxen, and follow up in two weeks. (Tr. 841, 566.)

The ALJ further discussed Corey's appointment with PA Obendorf on January 26, 2021, a month after his bicycle accident. (Tr. 841.) Corey reported working at WingStop doing "prep work and unloading [a] truck." (Tr. 842, 562.) Corey no longer had elbow pain and reported being more active, which increased his pain (Tr. 842, 562.) Corey's reported activities included cooking, cleaning around the house, and walking around the store. (Tr. 842, 562.) Corey had a positive straight leg raise test on the right; pain with back rotation to the right, back flexion while touching his toes, and with doing a standing squat; an antalgic gait; grossly intact sensation of the bilateral lower extremities; full strength of both knees; and no midline lumbar tenderness. (Tr. 841-42, 563.) Corey could get up and down from the exam table without assistance. (Tr. 842, 563.)

PA Obendorf assessed acute right-sided low back pain with sciatica and recommended a prednisone taper and physical therapy. (Tr. 841, 562.) PA Obendorf noted Corey was still having pain and could not perform his job duties secondary to pain. (Tr. 841-42, 563.) An MRI of the lumbar spine performed on February 5, 2021 showed degenerative changes in the lower lumbar spine with lateral recess narrowing at L4-5. (Tr. 842, 634-35.) The MRI further showed lateral recess narrowing at L5-S1 with crowding of the descending left greater than right L5 and S1 nerve roots and foraminal stenosis, most pronounced and mild-to-moderate, bilaterally, at L5-S1. (Tr. 842, 634-35.) Corey also had an initial physical therapy session on February 11, 2021, but was discharged only a few days later because reportedly, he was not benefitting from it, and all movement worsened his right lower extremity symptoms. (Tr. 842, 549-51, 545-46, 521.)

The ALJ discussed Corey's appointment with spine specialist, Jennifer Betts Oliver, D.O., on February 17, 2021. (Tr. 842, 545-49.) On exam, he had a normal gait without using an assistive device, normal balance and fine motor skills, normal strength, and positive straight leg raise on the right. (Tr. 842, 548.) A couple of weeks later, Dr. Oliver

7

treated Corey with a transforaminal epidural steroid injection. (Tr. 842, 540.) On March 17, 2021, Corey reported the injection resolved symptoms below his knee, but he had ongoing pain of the right buttock and right posterior knee. (Tr. 842, 521, 534.) Corey declined Dr. Oliver's recommendation for a sacroiliac joint injection. (Tr. 842, 534.) She ordered additional physical therapy, explaining to Corey that physical therapy could increase his pain before reducing it. (Tr. 842, 534.)

The ALJ discussed Corey's physical therapy results. (Tr. 842.) Corey restarted physical therapy and in August 2021, he reported "only R buttock pain[,]" no longer having sleep disturbances, and being able to tolerate standing for about 30 minutes. (Tr. 842, 452.) Physical therapy notes show Corey did "very well in PT." (Tr. 453.) In November 2021, Corey reported "no pain[,]" neck tightness but "doing better overall[,]" and still having "pain at times" with right-sided sciatic pain. (Tr. 396.) Corey said sitting for about an hour or standing for two plus hours caused pain. (Tr. 396.)

At physical therapy in April 2022, Corey reported a two on the numerical pain score with pain primarily in the pelvic floor/testicular area. (Tr. 301.) Dr. Oliver administered a genitofemoral nerve injection a few days later and again in June 2022. (Tr. 842-43, 300, 731-32.) By July

2022, Corey reported only on and off, brief testicular pain, which he presently rated as 2-3/10. (Tr. 843, 710.) Corey continued with his treatment of physical therapy and injections. (Tr. 843, 697-98, 712-13.) On September 6, 2022, Corey reported feeling good and having no pain when he performed exercises. (Tr. 842, 742.)

The ALJ considered that when Corey followed up with PA Obendorf on September 21, 2022, he had no midline lumbar pain and intact sensation and strength. (Tr. 843, 781.) Corey said he walked about two miles in the morning, with pain the last quarter of a mile. (Tr. 843, 780.) PA Obendorf noted that Corey was "very much improved" and planning to return to sedentary work in three weeks. (Tr. 843, 781.)

The ALJ noted that Corey generally demonstrated a normal gait and normal strength. (Tr. 843, 396, 437, 523, 548, 359.) He also considered that Corey returned to work in November 2022. (Tr. 843, 772.) Corey was working in a lumber yard and lifting no more than 10 pounds at a time. (Tr. 843, 772.) Corey does not challenge the ALJ's finding that as of November 1, 2022, through the date of the decision, May 7, 2025, he was engaged in substantial gainful activity. (Tr. 846-47.) ("Medical improvement occurred such that the claimant returned to work full-time at the SGA level on November 1, 2022,

8

and he remains employed full-time at the SGA level, to which he has admitted."). *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (explaining that a party forfeits an argument "by failing to develop [its] argument—even if [its] brief takes a passing shot at the issue") (cleaned up).

The ALJ also considered Corey's reporting in January 2023 that he used Flexeril (a muscle relaxer for pain) as needed, which was only three times over the past two months. (Tr. 843, 772.) Corey was "sitting mostly[,] so his pain [was] well-controlled." (Tr. 843, 772.) The ALJ noted that despite pain, Corey reported activities of making breakfast, getting his son ready for school, running errands, cleaning, making complete meals, doing laundry and some ironing, going outside often, driving, shopping in stores regularly, and going to the park regularly. (Tr. 843-44, 249-52.)

The ALJ also recounted Corey's allegation that during the requested closed period, he could sit/stand for only about 15 minutes at a time before needing to change postures. (Tr. 840, 867-69.) He also noted that Corey was doing prep work and unloading a truck for work in January 2021, a

month after his accident. (Tr. 841, 562.) Accordingly, the ALJ reasonably determined that Corey's mostly normal exam findings, improvement with physical therapy, and activities of daily living supported that he had work-related limitations but not to the degree he alleged.[2] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); (Tr. 839-44.) Corey does not challenge this finding. *See Grayson O Co.*, 856 F.3d at 316.

The ALJ also found the state agency experts' assessment for light level work with postural limitations somewhat persuasive because he found Corey more limited and assessed greater limitations. (Tr. 839, 844, 74-76, 80-82, 87-88, 93-94.) And he explained that PA Obendorf's reference to sedentary work was not persuasive because it was inconsistent with evidence of Corey having normal sensation and strength and no midline lumbar pain, being "much improved," and walking about two miles in the morning, albeit with pain the last quarter of a mile. (Tr. 843, 780-81.) Corey does not challenge how the ALJ evaluated this evidence. *See Grayson O Co.*, 856 F.3d at 316. Against this backdrop, the ALJ assessed an RFC for a reduced range of light work with a sit-stand option for the period of December 26, 2020

---

[2] Contrary to Corey's assertion that his pain level ranged from "5/10 at best," Docket Entry 9 at 5, he assessed his pain as 3/10 in February 2021. (Tr. 552.) In April 2021, Corey assessed 2/10 and 4/10

pain; in May 2021, he assessed 3/10 pain; in June and July 2022, he assessed 2-4/10 pain. (Tr. 501, 504, 509, 552, 710, 731.)

through October 31, 2022. (Tr. 839.)

Corey now argues that the ALJ erred by improperly considering whether medical treatment during his two-year long recovery from the bike accident would have resulted in work preclusive absenteeism. Docket Entry 9 at 5-24. He has failed to prove, however, that he required limitations beyond the ALJ's comprehensive RFC, which was specifically tailored to account for Corey's limitations following the bicycle accident. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (concluding that a claimant bears the burden of proving he meets the definition of disability).

Corey highlights testimony from the vocational expert that employers typically allow a worker to be absent once a month, but if he is consistently absent for two or more days, which includes arriving late/leaving early two or more days per month, that would be work-preclusive. Docket Entry 9 at 9; Tr. 885, 887. Corey contends the record established he would experience such absenteeism by virtue of the sheer volume of his medical treatment. Docket Entry 9 at 10-24.

But this objection is not persuasive. At the outset, the ALJ was aware that he needed to consider whether Corey would be off-task or miss work due to treatment. (Tr. 835, 839-40.) He discussed Corey's treatment history, including physical therapy, during the

period of December 26, 2020 through October 31, 2022. (Tr. 839-44.) He noted the degree of physical therapy/treatment Corey had following the accident. (Tr. 844.) The ALJ explained that the prior administrative medical findings were not restrictive enough. (Tr. 844.) The ALJ also said that the reason he included an RFC limitation for being off-task up to 14% of the time was because of the degree of medical appointments Corey had during the recovery period after the accident. (Tr. 839, 844.) And the ALJ was not required to include absences in the RFC because Corey failed to prove they were warranted in light of the record set forth above, which the ALJ discussed at length.

The facts of this case are distinguishable from those in *Dennis v. Kijakazi*, No. 21-2078, 2023 WL 2945903 (4th Cir. Apr. 14, 2023), and the other cases cited by Corey. *See* Docket Entry 9 at 6-9. In *Dennis*, the Fourth Circuit stated it could not meaningfully review the decision because the ALJ did not discuss the evidence supporting the claimant's alleged need to miss work or adequately explain why the evidence should be rejected. 2023 WL 2945903, at *5. Here, however, the ALJ did discuss this evidence (Tr. 835) (ALJ stating the Appeals Council remanded the case for consideration of off-task percentage and absences); (Tr. 839) (ALJ noting Corey's representative cited 100 medical

10

visits and argued Corey would have missed "a lot" of work); (Tr. 844) (ALJ explaining that based on his consideration of the degree of physical therapy/treatment after Corey's accident, he assessed a limitation for being off task up to 14% of the workday). At best, Corey's challenge amounts to a request for this Court to reweigh the evidence, which, as explained at the outset of this Order, it may not do. *See Craig*, 76 F.3d at 589.

Here, the ALJ found that sustained work activity was within Corey's capability. Corey has failed to undermine that finding. Corey's appointments, by all appearances, were regularly scheduled. Corey presented no evidence that his appointment times were immovable or that they otherwise could not be scheduled around work. *See Belinda S. v. Frank Bisignano, Soc. Sec. Admin.*, No. 1:25-CV-2081-JMC, 2026 WL 1295517, at *4 (D. Md. May 12, 2026) ("[I]n *Dennis*, there was evidence the ALJ ignored evidence tending to show that the claimant needed to miss work based on her underlying medical conditions. Here, the ALJ recognized Plaintiff's position that she could not work due to having too many doctor's appointments and after analyzing the underlying medical claims, the ALJ rejected such a position. Unlike the *Dennis* claimant who was hospitalized for chronic conditions on multiple occasions, the Plaintiff here does not

identify any hospitalizations, overnight stays, or any other unpredictable emergency room visits during the alleged disability period.") (citations omitted).

The vocational expert may have testified that too many absences a month would be work preclusive, but the actual record failed to establish that Corey required such excessive absences. Substantial evidence supports the ALJ's conclusion that Corey could work with all of the limitations the ALJ assessed.

Last, to the extent Corey claims that the prior ALJ decision erred, the one that the Appeals Council vacated when it remanded that decision for further findings (Tr. 929-30), Docket Entry 9 at 6-10, any alleged errors in that vacated decision have no relevance to whether the decision currently subject to review (Tr. 835-47) is supported by substantial evidence. *See Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763-64 n.3 (W.D. Va. 2002) (explaining that, on remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*).

For all of the reasons set forth above, the Court will affirm.

V. CONCLUSION

After careful consideration of the evidence of record, the Court finds

11

that the Commissioner's decision is legally correct, supported by substantial evidence, and susceptible to judicial review.

Accordingly, **IT IS HEREBY ORDERED** that the final decision of the Commissioner is upheld.

_____
JoAnna Gibson McFadden
United States Magistrate Judge

June 1, 2026

12